### SLATER v. SOUTH CAROLINA RAILWAY COMPANY.

1. A non-suit is proper where there is a total absence of testimony to all of the material averments in the complaint, or to any one of them; or where the plaintiff's case is defeated by a defence admitted by him or established without controversy by his witnesses in their examination, direct or cross.
2. A common carrier is not liable for an injury done to chattels in his possession, if he can show that the entire cause of the injury was an act of God—the burden of proof resting on the carrier.
3. A mixed train of cars left Augusta. Ga., for Charleston, S. C., on schedule, just one hour after the first shock of the earthquake of August 31, 1886, and ran on schedule time, without extra precautions, until it was wrecked at a washout in the road caused by floods from mill dams which were broken by the earthquake. *Held*, that there was no negligence on the part of the railroad company, but that the earthquake—an act of God—was the entire cause of the accident.

Before PRESSLEY, J., Aiken, February, 1888.

This was an action by Edward F. Slater to recover from defendant damages for the loss of five horses and for injury done to fifteen horses and mules, while being carried by defendant on its cars from Augusta, Georgia, to Orangeburg, in this State. These animals were shipped to plaintiff from Franke, Indiana, *via* Augusta, where they were received and forwarded by the defendant.

The first shock of the great earthquake of August 31, 1886, was felt in Augusta at 9.52 p. m. A train from Charleston due at 10.15, was on time at 9.30, but had not arrived when the

mixed train, with these animals on board, left on time at 10.50. No inspection of the road bed was made that night after the earthquake, except that an official, being on the bridge over the Savannah River, noticed that it was not injured.   The mixed train, having the right of the road, proceeded at its regular speed, until it ran into a break in the road and was wrecked, five of plaintiff's horses being killed or drowned, and some of the others injured.   This break was caused by a flood of water coming from the direction of two mill dams, which were found to be broken. It was also shown that the telegraph wires were not working after the earthquake, but that it was not uncommon for the wires to be broken, and trains were not detained on that account, as the rules of the road clearly determine what trains are entitled to the right of the way.

The judge granted a non-suit by an order as follows:

I regard it as clearly proved in this case that the carrier is relieved from the common law liability, the damage having occurred by the act of God.   Whether damage caused by a sudden freshet in the river would be considered an act of God, I will not undertake to determine; but where the flood arises from a local cause not preceded by a flood of rain, but simply by the breakage of two dams—where it happens in that way, I take it to be clear that it is within the definition given of an act of God.   A sawyer or snag in the river, and not known to be there, has been held to relieve the liability of a common carrier.   Any obstruction accidentally put in a navigable stream, not there before and not known to be there, has been held to relieve the liability of a common carrier.   And this railroad track being struck by a local flood, the causes of which could not have been known (there could have been no foreknowledge of it whatever), makes it clearly a case within the definition of the act of God.

Then the sole question is, "Is there negligence?   Must the defendant disprove negligence?"   The question is, Is the negligence in this case disproved?   Is there any proof whatever of negligence?   Is there the slightest evidence of negligence? There is proof of an earthquake, but no proof that any previous earthquake ever did so upturn the bed of a railroad as to make it unsafe for the trains to travel on the road

immediately afterwards. I know of no such instance in any of the earthquakes I have read of. So that an earthquake in itself is no warning whatever that the track is out of order. In fact, the track was in good order up to where the flood struck it. As to the telegraph being out of order—if we had to stop the running of trains because the telegraph lines were out of order, we would have to stop all the trains in the world whenever a gust of wind blew down a telegraph pole. That doctrine would never do. That would stop all commerce.

Well, now, one may judge of the defendant's negligence by what he happened to have done himself under the same circumstances. When the earthquake came, I was away from my home with my wife, and I immediately started for home, the very centre of the earthquake, Summerville, as quick as I could, and the only reason why I was prevented from going was, that the railroad train could not get up to take me. The proof is, that Mr. Henderson left Augusta immediately after the earthquake on this train. I cannot submit that question to the jury to determine whether that was negligence or not, when they probably do not know anything about it, unless they were mixed up in it themselves. That question can only be determined by those who were mixed up in the thing at the time. I do not consider the fact that the defendant company started this train after the earthquake, and after the up train had failed to reach Augusta, is any proof of negligence to submit to the jury. I do not regard it as laying the foundation of negligence. We must look at this question not from our present standpoint, but from their standpoint at the time. I had no idea that my dwelling was shattered and the chimneys all burst to pieces. Nobody suspected such a thing except those in the midst of it.

Has not the defence disproved negligence? They have furnished the only proof on the subject through the plaintiff's witnesses. The witnesses say that they considered it perfectly safe— witnesses of experience in railroad matters. All the facts show that so far as the earthquake was concerned, it was perfectly safe for this train to run on the track until this flood struck it. There is no proof whatever that any part of that railroad suffered any damage, in the upper part of it, except what was done in the

upper part of it by that flood of water. I am reluctant to grant a non-suit, because I think it is better for cases of this kind to be settled by the verdict of a jury at once. But I consider that the damage was done by the act of God, and that there is no proof of negligence. The circumstances proved show no foundation of negligence, and even disprove negligence. The non-suit is accordingly granted.

From this judgment plaintiff appealed on the following grounds:

I. Because his honor erred in holding that there was no evidence to sustain the allegations of the complaint, when proof of delivery in good order and loss and injury had been clearly shown.

II. Because the plaintiff having shown shipment and injury, it was incumbent upon the defendant to show that the injury arose from some excepted cause, and was not due to defendant's negligence, and his honor erred in not requiring such proof from the defendant.

III. Because his honor erred in holding that there was no proof of negligence on the part of the defendant.

IV. Because his honor erred in holding "that the fact that the defendant company started this train after the earthquake, and after the up train had failed to reach Augusta," and while there was no telegraphic communication, was no proof of negligence to submit to a jury.

V. Because his honor erred in granting the non-suit.

*Mr. T. M. Raysor*, for appellant.

*Messrs. Brawley & Barnwell* and *Izlar & Glaze*, contra.

July 2, 1888. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. In the case below, the plaintiff sought to recover damages from the defendant, a railway corporation, for alleged injuries to certain horses and mules shipped by plaintiff at Augusta, Ga., and consigned to plaintiff at Orangeburg, of this State. The main defence set up was, that the injury complained of resulted from the direct act of God, to wit, the recent earthquake "on the night of thirty-first of August, 1886, which was unforeseen, unprecedented, and providential, setting

loose the waters confined in the pond at Langley Mill, adjacent to the track of said defendant, near Horse Creek, a locality on the road, and said waters, being irresistible in their violence, swept away and destroyed the said horses and mules which were not delivered and injured the rest in some degree, the defendant having exercised due care and diligence both in the transportation of said horses and in an effort to save them."

At the close of plaintiff's testimony, from which it appeared, through the cross examination by defendant's attorney, that in all probability the injury resulted from the earthquake, the presiding judge, on motion of defendant, granted a non-suit, on the ground that he was satisfied that the earthquake—an act of God—caused the injury, and that there was no sufficient evidence of negligence on the part of the defendant to carry the case to the jury. The appeal questions this ruling of his honor.

A common carrier, at common law, is an insurer against all injuries to the property in transit, except such as may be caused by an act of God, or of the public enemies, or by some excepted cause in a special contract, other than negligence, and the defendant not having contributed thereto by his negligence; and the onus is upon the defendant to show the cause claimed as a defence. The recent case of our own court of *Wallingford & Russell* v. *Columbia & Greenville R. R. Co.* (26 S. C., 258), is sufficient authority here.

The law in reference to non-suits has been stated in several recent cases. In brief terms, it is as follows : a non-suit should be granted where there is a total absence of testimony to all or to any one of the material averments in plaintiff's complaint. Not simply where, in the opinion of the judge, the testimony as to its force and weight is insufficient to make out the plaintiff's case in every particular, but where there is no relevant or pertinent evidence to one or more of the said averments—no evidence that the jury could consider and weigh if the case went to them. This is the general rule, but in addition to this, where the defence, if true, would be sufficient to defeat the plaintiff, and that defence is admitted or not controverted by the plaintiff, then the case is in substance one of a total failure of evidence, and a non-suit would be proper. *Pool* v. *Railroad Company*, 23 S. C., 289.

Now, in the case before the court the material allegations of the complaint were, first, that the defendant was a common carrier; that the horses and mules in question were shipped upon defendant's road; and that they were injured before they reached their destination.   There was certainly evidence as to all of these allegations, which *prima facie* should have carried the case to the jury.   But the ground of the non-suit is, that an act of God (the earthquake) was the cause of the disaster; that this fact appeared from the testimony of plaintiff's witnesses on cross examination; true, not admitted in terms, but yet not controverted, and consequently, that fact stands in the case as substantially admitted, thus bringing the case under the rule of *Pool* v. *Railroad Company, supra.*

Where an act of God causes injury to property in the hands of a common carrier, and such act is the sole cause of such injury, then the proof of this fact is a perfect shield.   But if there be any negligence on the part of the carrier, which, if it had not been present, the injury would not have happened, notwithstanding the act of God, the carrier cannot escape responsibility. And the onus is upon the carrier to show not only that the act of God was the cause, but that it was the entire cause; because it is only when the act of God is the *entire* cause that the carrier can be shielded.   He insures against everything except the act of God and the public enemies, and unless he proves that the disaster was due wholly and entirely to one of these causes, then it must be presumed to be due, in part at least, to some other cause. And as against any other cause he is an insurer.   The onus, then, is upon him to prove the absence of negligence unless, as we have said, the proof is that the act of God is the entire cause, which, if so, would of course in itself show the absence of negligence.

Now, the matter for the presiding judge to consider in this case, when the motion for non-suit was made—inasmuch as the earthquake seemed to be the cause of the injury—was, whether it was the entire cause; if not, the question of negligence as contributing to said injury was still open, and being a matter of fact should have gone to the jury.   But if it appeared that the earthquake was the entire cause, admittedly so, or at least not seri-

ously controverted, then this negatived the idea of negligence contributory or otherwise, and there was no necessity for the case to be sent to the jury. Looking at the case when the plaintiff closed, and before the defendant was called upon to introduce witnesses to its defence, the case as made out by plaintiff's witnesses, sustaining, as they did, the defendant's defence, was not, in our opinion, such a case as demanded further investigation by a jury, because under the peculiar circumstances there was an absence of testimony to material allegations of the complaint, as in the case of *Pool* v. *Railroad Company, supra.*

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.